MARC E. JOHNSON, Judge.
| gPlaintiff/app ellant, Data Management Corporation, appeals from the trial court’s denial of its petition for preliminary and permanent injunctive relief, mandamus relief and declaratory judgment relating to a public contract for which bids were advertised under the Louisiana Public Bid Laws.[1] For the reasons that follow, we affirm.

FACTS & PROCEDURAL HISTORY

On November 3, 2010, the Parish of St. John the Baptist (“the Parish”) advertised for bids on a drainage excavation service contract (“the Project”) and set a December 14, 2010 deadline for submitting bids. Data Management Corporation (“DMC”), along with several other contractors, timely submitted a bid on the |sProject. After the bids were tabulated, it was determined that DMC was the lowest bidder with a bid of $9,476.00.
The next day, on December 15, 2010, Compass Ventures Unlimited, LLC (“Compass”), a contractor with the second lowest bid of $9,866.50, sent an email to the Parish Engineer, C.J. Savoie, challeng *559 ing DMC as the lowest bidder for the Project on the basis DMC did not possess the Earthwork, Drainage and Levees license (“EDL license”) as required by the bid specification documents. Two days later, Mr. Savoie sent an email to the Attorney General’s Office seeking an unofficial opinion as to the validity of DMC’s bid. Mr. Savoie noted that DMC held a license which may qualify it to perform the contractual work but that it did not hold the specified license. The Attorney General’s Office responded the same day advising that the bid documents specified a particular license classification and any bidder who did not have the specified license classification would not be a responsive bidder; thus, its bid would have to be rejected.
On December 20, 2010, the Louisiana State Licensing Board for Contractors responded to inquiry by the Parish as to which licensing classifications would be appropriate for the work detailed in the Project contract. The Board listed six categories of classifications that would be acceptable: (1) Clearing, Grubbing, and Snagging; (2) Earthwork, Drainage, and Levees; (3) Dams, Reservoirs, and Flood Control Work other than Levees; (4) Highway, Street, and Bridge Construction; (5) Heavy Construction; and (6) Building Construction.[2]
On December 21, 2010, Mr. Savoie advised DMC via letter that its bid for the Project was rejected on the basis DMC did not possess the specified EDL license and, thus, it was a non-responsive bidder. DMC subsequently requested a ^Parish Administrative hearing on its disqualification, which was set for January 18, 2011. The results of this hearing are not included in the appellate record. However, correspondence from the Parish Attorney, Thomas Daley, to the Parish President and the Parish Council, indicates that on January 25, 2011, Mr. Daley recommended the Parish reject all of the bids received on the Project on the basis of ambiguities in the bid specifications regarding the licenses required for the Project. Additionally, the agenda from a January 25, 2011 council meeting shows the awarding of the Project contract to either DMC or Compass was tabled on January 11, 2011.
On the same day Mr. Daley made his recommendation to the Parish Council to reject all of the bids, DMC filed a Petition for Temporary Restraining Order, Preliminary and Permanent Injunction, Mandamus, and Declaratory Judgment in the 40th Judicial District Court. In its petition, DMC alleged it was the lowest bid and, thus, the Parish was obligated by the Public Bid Law to award the contract to DMC. DMC maintained it possessed the required licenses under the special conditions section of the bid documents. It asserted the bid documents required either a license that qualifies a bidder to do the specified work or the license specifically stated in the scope section of the bid documents. DMC further alleged the Parish did not have authority to reject all bids.
After a telephone conference with the Parish and DMC, the date of which cannot be determined from the record, the trial judge granted a temporary restraining order preventing the Parish from rejecting all bids, and a hearing was set for January 31, 2011. Three days prior to the hearing, Compass filed a Petition of Intervention, Declaratory Judgment, and Mandamus seeking a determination that it is the lowest responsible bidder and that the Parish be ordered to award the Project contract to Compass as such. Compass asserted *560 DMC’s bid was nonjresponsive6 and was properly rejected. It further contended there was no just cause for the Parish to reject all bids.
All three parties, DMC, the Parish and Compass, appeared at the January 31, 2011 hearing and entered stipulations of facts and to the authenticity of numerous exhibits. The trial court rendered a written judgment on February 2, 2011 finding the Parish could not reject all bids because it did not have just cause to do so. It also determined DMC was a non-responsive bidder because it did not possess the EDL license required by the bid documents and, thus, denied DMC’s request for mandamus and declaratory relief. The trial court further granted Compass’ petition for intervention and mandamus relief on the basis Compass possessed the required EDL license and was the lowest responsive bidder. The Parish was directed to award the Project contract to Compass as the lowest responsible and responsive bidder.

ISSUES

On appeal, DMC contends the trial court erred in finding its bid to be non-responsive on the basis the bid documents required an EDL license, which DMC lacked. DMC maintains an EDL license was merely one acceptable license category listed in the bid documents and was not required to perform the work. It also argues the trial court erred in granting Compass’ petition for mandamus because its petition of intervention was never served; thus, any judgment relating to the petition is an absolute nullity.

LAW & ANALYSIS

Louisiana’s Public Bid Law provides that all public work contracts “shall be advertised and let by contract to the lowest responsible bidder who had bid according to the contract, plans, and specifications as advertised.” La. R.S. 38:2212(A)(l)(a). This is a prohibitory law founded on public policy. Hamp’s 6Construction L.L.C. v. City of New Orleans, 05-489 (La.2/22/06), 924 So.2d 104, 107. It was enacted in the interest of taxpaying citizens of this State, and its purpose is to protect the citizens against contracts awarded through favoritism, possibly involving exorbitant and extortionate prices. A.M.E. Disaster Recovery Services, Inc. v. St. John Baptist Parish School Bd., 10-500 (La.App. 5 Cir. 11/23/10), 54 So.3d 719, 722, writ denied, 10-2831 (La.2/11/11), 56 So.3d 1005, citing Haughton Elevator Division v. State, Through Division of Administration, 367 So.2d 1161 (La.1979).
Pursuant to the Public Bid Law, the legislature has specifically prescribed the conditions upon which it will permit public work to be done on its behalf or on behalf of its political subdivisions and a political entity has no authority to take any action which is inconsistent with the Public Bid Law. J. Caldarera & Co., Inc. v. St. James Parish Hosp. Service Dist., 09-166 (La.App. 5 Cir. 11/24/09), 28 So.3d 1112, 1114, writ denied, 09-2814 (La.3/26/10), 29 So.3d 1262, citing Hamp’s Const., supra. A public agency awarding a public works contract is vested with the power and discretion to determine the responsibility of the bidder and to reject all bids if none are satisfactory. However, the law does not allow the agency to arbitrarily select one bid, which is higher, and reject other bids, which are lower. The agency’s discretion must be exercised in a fair and legal manner and not arbitrarily. A.M.E. Disaster Recovery Services, 54 So.3d at 722.
Under La. R.S. 38:2212(A)(l)(b), any requirements of the Public Bid Law, the bid advertisement, and the bid form cannot be waived by the public entity under any circumstances, regardless of *561 whether the requirements could be considered informalities. Hamp’s Const., 924 So.2d at 110. “[W]hen a public entity-elects to place certain requirements in its advertisements for bids and on its bid form, that entity is bound by those requirements and may not choose to waive 17them at a later date.” Broadmoor L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Authority, 04-211 (La.3/18/04), 867 So.2d 651, 657. This prohibition against waiver furthers the public interest because it expressly prevents a public entity from specifying certain requirements in a bid and later changing those requirements to accept alternate or substitute proposals. Beverly Construction. Co., L.L.C. v. Parish of Jefferson, 07-847 (La.App. 5 Cir. 2/6/08), 979 So.2d 551, 553-54.
The Parish’s advertisement for bids for the Project specifically stated that, “[a]ll bidders must show proof that he/she is licensed in the State of Louisiana to perform this type of construction.” The bid documents included Technical Specifications and Special Conditions. Under the “Scope” provision of the Technical Specifications, the contract described the type of work to be performed in the drainage excavation work as follows: “Excavating by use of a mechanical excavator to remove sediment soil material from parish ditches and to remove and replace culverts, supplied by the Parish, as needed. In addition, the Contractor shall cut, remove and replace paved driveways as required to complete the ditch excavation.” It further stated, “The Contractor shall have a current Earthwork, Drainage and Levees license as approved by the Louisiana State Contractors Licensing Board.” (Emphasis added.)
It is undisputed that DMC did not possess an EDL license. As such, the Parish deemed DMC’s bid non-responsive. On appeal, DMC asserts an EDL license was not required for the Project, but rather was only one of several permissive licenses as evidenced by the Special Conditions provision of the bid documents. DMC contends its bid was responsive because it was properly licensed under the Special Conditions requirements.
|sThe Special Conditions document addressed “Insurance, certificates, Contractor’s insurance responsibility, Hold Harmless Agreement, license requirements, Commencement of Work, Time of Completion, Public Works responsibility, Parish payment responsibility and Liens.” Subsection V, entitled “License Requirements,” provided:
1. When applicable, a current St. John the Baptist Parish Occupational License is to be maintained during the duration of this contract. Yearly, a copy of such license shall be provided to the Director of Purchasing.
2. When applicable, a current Louisiana State Contractor’s License should be furnished or as stated in the “Scope of Work.”
(Emphasis added.)
DMC contends this language means it could possess either any Louisiana contractor’s license or an EDL license as required under the Technical Specifications. We disagree.
In the interpretation of contracts, the specific controls the general. Barkley Estate Community Ass’n, Inc. v. Huskey, 09-268 (La.App. 5 Cir. 1/12/10), 30 So.3d 992, 998. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract. La. C.C. art. 2050; Lee v. First National Bank of Commerce, 04-659 (La.App. 5 Cir. 2/15/05), 893 So.2d 1030, 1034, writ denied, 05-907 (La.5/20/05), 902 S.2d 1054. Furthermore, the rules of strict construction *562 do no authorize the creation of ambiguities where none exist. Hertz Corp. v. R & R Properties, L.L.C., 11-50 (La.App. 5 Cir. 12/28/11), 83 So.3d 205, 210 citing Freeport-McMoran Energy, LLC v. Cedyco Corp., 10-367 (La.App. 4 Cir. 1/5/11), 54 So.3d 813, writ denied, 11-442 (La.4/29/11), 62 So.3d 111.
The Special Conditions of the contract are clearly the more general provisions. They are not specific to the drainage excavation project but rather refer |9to the general conditions that apply to a public works contract with the Parish. The Licensing Requirements of the Special Conditions expressly refer to the more specific provision of the Technical Specifications pertaining to the scope of work. The “Scope” of the Technical Specifications expressly requires an EDL license for the Project.
To read the contract as urged by DMC would lead to an absurd result. Under DMC’s interpretation of the contract, a contractor’s license would not even be required to perform the work because the License Requirements of the Special Conditions, upon which DMC solely relies, only state that a contractor’s license should be provided when applicable; it does not independently mandate the license.
In applying the rules of contract interpretation and specifically interpreting all provisions in light of one another, we do not find the language of Subsection V of the Special Conditions dispensed with the express requirement of an EDL license in the Technical Specifications. Accordingly, we do not find the Parish abused its discretion in disqualifying DMC as a non-responsive bidder on the basis it lacked an EDL license as required by the Project contract. As such, we find no error in the trial court’s denial of DMC’s petition requesting mandamus relief and declaratory judgment.
Having determined DMC was a non-responsive bidder and, therefore, not entitled to being awarded the Project contract under the Public Bid Law, we find no need to address DMC’s second assignment of error relating to the trial court’s judgment granting Compass’ Petition of Intervention for mandamus relief.
1m DECREE
For these reasons, we affirm the trial court’s judgment denying DMC’s petition for mandamus and declaratory judgment. DMC is to bear the costs of this appeal.

AFFIRMED

. Although appellant claims the trial court denied its preliminary and permanent injunction, the record reflects that the requested injunctive relief was granted; specifically, the Parish was enjoined from rejecting all submitted bids because just cause did not exist. Thus, this appeal is only from the denial of appellant’s request for mandamus relief and declaratory judgment relating to its right to be awarded the contract under the Public Bid Law.

. It is noted that DMC possessed licenses for two of these categories: Heavy Construction and Building Construction. It is further noted that Earthwork, Drainage, and Levees is a sub-category of the Highway, Street, and Bridge Construction category.