STEPHEN J. WINDHORST, Judge.
| ¡.Appellants, Reginene and Tyrone Le-gette (“the Legettes”), appeal from the trial court’s judgment in favor of JIB Line Group, L;L.C. (“JIB”) and against the Le-gettes in the amount of $59,700.00. For the reasons that follow, we affirm.
On August 23, 2005, JIB and the Le-gettes entered into an “Investment Agreement” involving the Sabal Park Holiday Inn Stay Bridge Hotels (“the property”), wherein JIB agreed to pay to the Legettes $60,000.00 as an initial investment in the property. The hotel was not completed *95 until 2007 and only operated for a couple of months before it was closed.
On September 24, 2012, JIB filed a petition for damages seeking the return of its initial investment of $60,000.00, pursuant to the terms of the agreement.[1] After trial on the merits, the trial court entered judgment in favor of JIB and against the Legettes in the amount of $59,700.00.[2] The trial court found that there was a contractual agreement between JIB and the Legettes, individually, and not with Sabal Park Sunway L.L.C, or any other entity. The trial court determined |sthat the agreement was not ambiguous, but even assuming it was, uncertainties would be construed against the party who prepared the document, i.e., the Legettes. The trial court further found that the Le-gettes certified that within the first five years all of the initial $60,000.00 investment “will be earned by the property and returned to the investor.” The trial court then awarded judgment in favor of JIB and against the Legettes, individually.
In their only assignment of error, the Legettes contend that the trial court erred in finding that the Legettes were personally responsible for returning JIB’s initial investment. The Legettes argue that the agreement clearly provides that the funds would be earned by and returned from the property’s earnings, not from the Legettes. The Legettes and JIB both agree that the sole issue in this case is the interpretation of the one-page document entitled “Investment Agreement.”
Generally, a contract, subject to interpretation on the four corners of the instrument without the necessity of extrinsic evidence, is interpreted as a matter of law. 2800 Associates, L.L.C. v. Eagle Equity Ltd. Partnership No. 3, 10-687 (La. App. 5 Cir. 3/29/11), 64 So.3d 283, 290; Bayou Fleet Partnership v. Phillip Family, LLC, 11-924 (La.App. 5 Cir. 3/27/12), 91 So.3d 1112, 1115. However, when factual findings are necessary to resolve a dispute over conflicting interpretations of the contract, those findings may only be disturbed if they are found to be manifestly erroneous. 2800 Associates, L.L.C, 64 So.3d at 290; Bayou Fleet Partnership, 91 So.3d at 1115.
A determination of fact is entitled to great deference on review. McGlothlin v. Christus St. Patrick Hosp., 10-2775 (La.7/1/11), 65 So.3d 1218, 1230. Factual findings of a trier of fact may not be disturbed by an appellate court absent manifest error. Cambre v. St. John the Baptist Parish, 12-590 (La.App. 5 Cir. 5/16/13), 119 So.3d 73, 77, writ denied, 13-1415 (La.10/11/13), 123 So.3d 1227. 14Where a conflict in the testimony exists, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed, even though the reviewing court may feel that its own evaluations and inferences are more reasonable. Allerton v. Broussard, 10-2071 (La.12/10/10), 50 So.3d 145, 145.
“Interpretation of a contract is the determination of the common intent of the parties.” La. C.C. art. 2045. Intent is an issue of fact which is to be inferred from all of the surrounding circumstances. D'Antonio v. Simone, 94-798 (La.App. 5 Cir. 3/15/95), 653 So.2d 678, 680. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art.2046; Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC, 12-2055 *96 (La.3/19/13), 112 So.3d 187, 192. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract. La. C.C. art. 2050; Clovelly Oil Co., 112 So.3d at 192; Data Management Corp. v. Parish of St. John the Baptist, 11-581 (La.App. 5 Cir. 2/14/12), 88 So.3d 557, 561. When ambiguity exists in a contract, the ambiguity is to be construed against the party providing the text. La. C.C. art. 2056; Certified Cleaning & Restoration, Inc. v. Lafayette Ins. Co., 10-948 (La.App. 5 Cir. 5/31/12), 96 So.3d 1248, 1251.
In its judgment, the trial court determined that the contract was between JIB and the Legettes, individually, and that return of the initial investment to JIB was due from the Legettes individually, not from another entity. Our review of the record does not establish that this determination is erroneous.
At the trial, the parties submitted a copy of the “Investment Agreement” executed between “JIB Line Group, L.L.C. (hereinafter “investor”)” and “Tyrone and Regi-nene Legette” concerning “Sabal Park Holiday Inn Stay Bridge Hotels.” The document provides, in pertinent part, as follows:
hi. It is understood by the parties that investor will pay unto Tyrone and Reginene Legette the sum of SIXTY THOUSAND DOLLARS AND 00/100 ($60,000.00) in return for an initial .0015454 ownership in the $11,000,000.00 concern, the property.
2.Tyrone and Reginene Legette certify that within the first five (5) years all of the initial investment of $60,000.00 will be earned by the property and returned to investor.
3. Until all funds ($60,000.00) are returned to investor, the percentage will be higher than the original investment to guarantee a speedy return of the initial investment within five (5) years or sooner.
4. Upon the return of investor’s initial investment of $60,000.00, then the percentage will convert back to the original price of the property ($11,-000,000.00) with a $60,000.00 initial investment, with a percentage amount of .005454 [sic ].
Mr. Legette testified that he has been in the construction business since 1998 or 1999. He is a licensed commercial and residential general contractor. He is a member of Sabal Park Sunway, L.L.C. (“Sabal Park”) which owned the property,[3] and that he had a 1/3 ownership interest in Sabal Park.
Mr. Legette testified that he prepared the agreement without consultation or advice from legal counsel. He testified that in return for investing $60,000.00, the agreement transfers a percentage of his 1/3 interest in Sabal Park to JIB.[4] However, Mr. Legette acknowledged that the language in the agreement does not convey or transfer an interest in Sabal Park to JIB. Mr. Legette also testified that he did not have permission from the other members of Sabal Park to sell part of his 1/3 ownership interest to JIB. He further admitted that he knew that JIB was legally prohibited from becoming a member of Sabal Park.
*97 Mr. Legette testified that the one-page document was an agreement based upon a performance of something else. He testified that he prepared paragraph two to state that the Legettes certified that JIB would be repaid the $60,000.00 within | fifive years. He testified that in paragraph two he was certifying that the interest of JIB’s investment would be initially higher for a “speedy return,” and that this “speedy return” was further explained in paragraph three. He also testified that the return of the investment to JIB would be paid from the property’s earnings. Mr. Legette testified that he never told JIB that he would return the investment from his own funds. He also testified that he did not inform JIB that the $60,000.00 would not be returned.
Mr. Legette repeatedly testified that JIB had an investment agreement with the Legettes, not with Sabal Park. He additionally testified that he returned $300.00 to JIB from funds he received from the property, and also testified that the $300.00 was paid out of another, unrelated account. Mr. Legette testified that he could not write a check to JIB out of the Sabal Park account because JIB had “an agreement with me.” Despite his repeated testimony to the contrary, Mr. Le-gette maintained that he is not personally responsible for the return of the $60,000.00.
Debra Hall, testified that JIB’s agreement was with the Legettes, and that JIB did not receive an interest in Sable Park. Ms. Hall also testified that she refused to sign any documents that did not certify that JIB’s $60,000.00 would be returned. Ms. Hall also testified that after five years she talked to the Legettes about returning JIB’s investment and was told by Mr. Le-gette that the $60,000.00 would be returned.
The “Investment Agreement” establishes that the agreement was between JIB and the Legettes individually. The Legettes did not sign the agreement on behalf of Sabal Park or any other entity. Based on the evidence and testimony, JIB did not buy an interest in Sabal Park, nor was an interest in Sabal Park conveyed or transferred to JIB. Furthermore, the agreement certified that JIB’s initial $60,000.00 investment would be earned by the property and “returned” within five |7years. The agreement says nothing to the effect that the $60,000.00 would only be returned from the property’s earnings, or only in the event that there were sufficient earnings.
Accordingly, we find that the trial court was not manifestly erroneous in finding in favor of JIB and against the Legettes in the amount of $59,700.00.
In answering this appeal, JIB contends that the Legettes’ appeal is frivolous. An appellate court may award damages for a frivolous appeal. La. C.C.P. art. 2164. This provision is penal in nature and is to be strictly construed. Treme v. Adams, 10-554 (La.App. 5 Cir. 1/1/11), 59 So.3d 1278, 1282.
Damages for frivolous appeals, like sanctions at the trial court level, are utilized to curtail the filing of appeals that are intended to delay litigation, harass another party, or those that have no reasonable basis in fact or law. Id. An appeal will not be deemed frivolous unless it is taken solely for delay, fails to raise a serious legal question, or counsel does not seriously believe in the proposition of law he is advancing. Id. Appeals are favored and appellate courts are reluctant to impose damages for frivolous appeals. Id.
Our review of the record does not show that this appeal was taken solely for delay or that the Legettes did not seriously be *98 lieve they were entitled to relief. An award to JIB for a frivolous appeal is not warranted.
Accordingly, we affirm the trial court’s judgment in favor of JIB and against the Legettes in the amount of $59,700.00, plus the costs of this appeal. JIB’s request for attorney’s fees pursuant to La. C.C.P. art. 2164 is denied.
AFFIRMED.

. JIB’s petition was amended on May 9, 2013.

. The Legettes were given credit for $300.00 previously returned to JIB.

. The other two members of Sabal Park are Don Culbertson and Torrance Small, each owning an individual 1/3 interest.

. Throughout the proceedings, the parties refer to Debra Hall and Dee Hall, instead of JIB. Debra Hall and Dee Hall are the owners of JIB. The parties do not dispute .that the agreement is with JIB, not Debra Hall and Dee Hall, individually.