POSITIVELYTILTON, LLC D/B/A TRIANGLE WEST

VERSUS

ACES OVER, INC.

NO. 19-CA-321

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 788-839, DIVISION "A"
HONORABLE RAYMOND S. STEIB, JR., JUDGE PRESIDING

December 26, 2019

**JOHN J. MOLAISON, JR.**
**JUDGE**

Panel composed of Judges Stephen J. Windhorst,
Hans J. Liljeberg, and John J. Molaison, Jr.

**AFFIRMED AND REMANDED**

    **JJM**
    **SJW**
    **HJL**

COUNSEL FOR PLAINTIFF/APPELLANT,
POSITIVELYTILTON, LLC D/B/A TRIANGLE WEST
        Leonard M. Berins
        Gerald Wasserman

COUNSEL FOR DEFENDANT/APPELLEE,
ACES OVER, INC.
        Edward S. Bopp
        Walter R. Woodruff, Jr.
        Tyler S. Loga

**MOLAISON, J.**

This is an appeal by plaintiff/defendant-in-rule, Positivelytilton, LLC d/b/a Triangle West Bar ("Positivelytilton"), taken from a grant of a rule to show cause seeking its eviction from a building pursuant to a commercial sublease agreement. As a result of the judgment, Positivelytilton lost its right to use the trade name "Triangle West" and was evicted from property it subleased from defendant/plaintiff-in-rule, Aces Over, Inc. ("Aces"). For the following reasons, we affirm the judgment of the trial court and remand the matter to the trial court for further proceedings.

## PROCEDURAL HISTORY

On October 24, 2018, Positivelytilton filed a petition to cancel a November 20, 2016 agreement between it and Aces by which Aces placed video poker machines in the bar operated by Positivelytilton at 10801 Jefferson Highway in River Ridge Louisiana. The immovable property leased for use as the bar is owned by River Ridge Investments, LLC and leased to Aces. Aces subleased the property to Positivelytilton. The petition sought a termination of the video poker agreement between Positivelytilton and Aces, and monetary damages for improperly charged video license fees, rent and underpayment of revenue.

Aces filed an answer and reconventional demand in which it asserted the parties entered into a commercial sublease for the premises on which Positivelytilton operated the Triangle West Bar for a rate of $2500 month in 2017, increasing to $2563 per month in 2018. Aces alleged that it rejected a payment offered by Positivelytilton in December of 2018 because the payment rendered was $2500, rather than the $2563 due. The reconventional demand also alleged that Positivelytilton failed to provide Aces with required proof of insurance, failed to pay required taxes, and made alterations to the property without permission in

violation of the terms of the sublease. Positivelytilton answered the reconventional demand, asserting the affirmative defense of improper cumulation of actions, and incorporating assertions of no right/no cause of action.[1]

Aces filed a "Rule to Show Cause Why Lessee Should Not Be Ordered to Surrender Possession of the Leased Property to Lessor and the Lease Terminated." On February 21, 2019, the trial court rendered a judgment granting the rule to show cause in favor of Aces. The judgment terminated the lease and Positivelytilton's right to use the trade name "Triangle West." The judgment further ordered Positivelytilton to vacate the premises and the adjacent parking lot. The judgment was amended to correct a typographical error on February 22, 2019.

Because the judgment appealed was not designated as a final judgment pursuant to La. C.C.P. art. 1915B[2], this Court ordered the matter remanded to the trial court for a determination of whether the amended judgment should be designated a final judgment. On October 25, 2019, the trial court rendered a consent judgment determining that there is no just reason for further delay in the appeal of the amended judgment and designated it as final.

**FACTS**

In August of 2015, Marion Seghers purchased a commercial building located at 10801 Jefferson Highway, River Ridge Louisiana through his company, River Ridge Investments, LLC ("River Ridge"). The property had been formerly operated as the Triangle West Bar, and Mr. Seghers' intent was to return the commercial building to commerce as an investment. He purchased the business, the contents of the property and the trade name of the business. Mr. Seghers

---

[1] It is not clear from the record whether improper cumulation of actions and no right/no cause of action were made by formal exceptions or were ever considered by the trial court.

[2] La C.C.P. art. 1915B provides: When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories against a party, whether in an original demand, reconventional demand, cross-claim, third-party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.

explained that under the zoning regulations a bar closed for over one year cannot be reopened. Thus, to keep the business viable he obtained an alcoholic beverage license to operate the bar in his name.

Mr. Seghers negotiated with Dina Torrence, owner of Positivelytilton, to open a bar and video poker establishment on the property. In early November of 2016, River Ridge and Positivelytilton entered into a five year lease for the property and an adjacent parking lot that was to commence on January 1, 2017. Subsequently, Positivelytilton entered into an agreement with Aces giving Aces the exclusive right to "place, operate, maintain and service coin/credit operated video poker devices" on the premises.

Daryl Grush, owner and operator of Aces, testified he that learned of Mr. Seghers' intent to reopen a bar at 10801 Jefferson Highway from one of his employees. Mr. Grush was introduced to Dina Torrence, owner of Positivelytilton, and was told that Mr. Seghers had leased the property to Dina Torrence's company. However, he discovered that Ms. Torrence did not have the financial resources to meet the obligations of the lease or to make the improvements necessary to accommodate the installation of the video poker machines and open the bar. Mr. Grush reached an agreement with Ms. Torrence to purchase video poker machines and secure the necessary licenses. He also lent her about $19,000 for improvements, the video poker machine bank, the damage deposit, and the first month's rent.

A meeting of representatives from River Ridge, Positivelytilton and Aces was held on November 18, 2016, during which it was decided that the lease between River Ridge and Positivelytilton would be voided, and the property would be leased to Aces. It was also agreed that Aces would then sublease the property to Positivelytilton. Mr. Seghers verified that the first lease between River Ridge and Positivelytilton was voided because Positivelytilton did not have the financial

means to make the necessary improvements to open the establishment or meet the financial obligations of the lease. The record contains a handwritten document entitled, "Mutual Agreement to Terminate Commercial Lease" executed on November 18, 2016 that confirms the cancelation of the lease between River Ridge and Positivelytilton.

Subsequently, River Ridge leased the premises, including an adjacent parking lot, to Aces. It is clear this lease is an adaptation of the original lease between River Ridge and Posivitelytilton because Positivelytilton is crossed out and Aces is handwritten in its place. All other terms of the lease remain the same. The lease is for the property at 10801 Jefferson Highway and the adjacent parking lot, and provides for the use of the trade name "Triangle West Bar." The lease is for a term of five years, beginning on January 1, 2017 and ending on December 31, 2021. Rent was set at a rate of $2500 per month for the first twelve month term, commencing on January 1, 2017 and ending December 31, 2017. The lease provides for rent increases annually. Rent for the calendar year of 2018 was set at $2563 per month, and for the calendar year of 2019, rent was set at $2627 per month, to be paid in advance.

The lease also contains a provision that states, "Tenant understands and agrees to pay lessor twenty percent (20%) of all video poker earnings/take during term of lease." According to Mr. Seghers' testimony, he discovered after signing the lease with Aces that it would be illegal for him to accept video poker earnings from the bar. To remedy the situation, an addendum to the lease between River Ridge and Aces was executed on December 1, 2016 to void the provision in the lease that provided for the payment of video poker earnings to River Ridge. The amendment clarified that neither River Ridge nor its member, Marion J. Seghers, is "receiving, or has received, or will receive any video poker earnings" from Aces.

On December 9, 2016, Aces subleased the property to Positivelytilton as evidenced by a Lease of Commercial Property (sometimes referred to as the "first sublease"). Again, the sublease is a copy of the original lease between River Ridge and Aces. In this sublease, River Ridge is crossed out and substituted with Aces. The terms of the sublease are the same as the original lease. It is for a term of five years, commencing on January 1, 2017 and ending on December 31, 2021. The rent is $2500 a month for 2017, $2563 per month in 2018, and $2627 per month in 2019. Mr. Seghers explained that the parties used the same lease document because it contained the protections for the property owner that he required.

The signature page on this sublease is not included in the record. However, a "Lessor's Affidavit" is included and shows that Ms. Torrence's signature was notarized on December 9, 2016. Mr. Grush's signed the affidavit, but his signature is neither notarized nor dated. Thus, the actual date this sublease was executed is not clear from the document. However, Mr. Grush's testimony indicates it was executed on December 9, 2016, and that testimony is not refuted.

On December 23, 2016, Aces and Positivelytilton entered into a new Commercial Gross Lease (sometimes referred to as the "second sublease") for the same property, with the exception of the parking lot, for a term of ten years beginning on January 1, 2017 and ending on January 1, 2027. Rent was set at $2500 per month with no provision for an increase in subsequent years. This second sublease is a short form lease and does not provide the protections for the property owner contained in the original long form lease. It does not mention the use of the name "Triangle West."

It was established by Mr. Grush's testimony that he obtained the Commercial Gross Lease, that a member of his staff filled it out, and he caused it to be executed by the parties. This sublease is for a term beginning on January 1, 2017 and ending on January 1, 2027 and sets a monthly rental rate of $2500 with

no provisions for rent increases in subsequent years. It is signed by both parties and notarized, and is for the property at 10801 Jefferson Highway, River Ridge Louisiana. That second sublease contains the following clause;

> 23. **Entire Agreements**. This is the entire agreement between the parties. It replaces and supersedes any and all oral agreements between the parties, as well as any prior writings.

Mr. Grush, confirmed that the second, short form sublease between Aces and Positivelytilton was signed after the first sublease between the parties. He testified that this second sublease was only executed to complete the necessary paperwork for state and parish officials to finalize the alcoholic beverage licensing process, and never intended to supersede the first sublease. Mr. Grush explained that his signature on the original December 9, 2016 sublease was not notarized and the sublease could not be used for the purpose of obtaining the alcoholic beverage license.[3] Consequently, he went to Office Depot and got a short form commercial lease to fill out strictly for the purpose of obtaining the license. His testimony that this second sublease was never intended to supersede the first, in spite of the above referenced clause, was not contradicted by any testimony at trial.

The bar was opened, the video poker machines were installed, and Ms. Torrence repaid all of the funds Mr. Grush lent to her. It appears that the parties operated under the terms of the first sublease throughout 2017. On January 11, 2018, Mr. Grush sent an email to Ms. Torrence indicating that the rent was eleven days overdue and making a demand for payment. Ultimately in that email, Mr. Grush agreed to allow the rent to remain at the rate of $2500 per month for the year 2018, and stated that, "all preceding (sic) years will follow the contract terms." Nevertheless, it appears from Mr. Grush's testimony that Ms. Torrence paid the

---

[3] It appears that the Mr. Grush subsequently recreated the first sublease and had his signature notarized on December 23, 2017.

higher monthly rent in accordance with the first sublease until November of 2018. Ms. Torrence does not refute that claim.

Mr. Grush testified that his employee, John Keelen, called to say that the check he picked up from Ms. Torrence in November of 2018 was in the amount of $2500, instead of $2563. Mr. Grush instructed Mr. Keelen not to accept the check. When Mr. Keelen conveyed this message to Ms. Torrence, she wrote a new check for $2563. In December of 2018, Ms. Torrence again tendered a check for $2500. Mr. Grush testified that he rejected that payment.

Correspondence between attorneys for Positivelytilton and Aces show that counsel for Positivelytilton sent checks "under protest" in the amount of $2500 each for December of 2018, and January and February of 2019. The letters also indicate Positivelytilton maintained it was entitled to a refund of the $2500 deposit paid pursuant to the first sublease that was voided by the second sublease. Photo copies of the checks are contained in the record. However, there is nothing in the record to indicate what happened to these checks. Thus, we cannot tell from the record if they were cashed, returned to Positivelytilton's attorney, or whether they remain in Mr. Grush's possession.

The trial court rejected Positivelytilton's argument at the hearing that the Gross Commercial Lease executed on December 23, 2016 superseded the Lease of Commercial Property executed on December 9, 2016 and is the valid contract between the parties. The trial court based this decision on Positivelytilton's payment of the enhanced rent amount of $2563 for the first eleven months of 2018. The trial court found the evidence established that Positivelytilton violated the terms of the first sublease by failing to pay the rent due of $2563 for the month of December, 2018, and by failing to pay the rent due of $2627 for the months of January and February, 2019. For those reasons, the trial court granted the rule to

show cause and ordered a termination of the lease and the eviction of Positivelytilton.

**LAW AND ANALYSIS**

Positivelytilton appeals the ruling of the trial court and assigns six errors for our review. Essentially, Positivelytilton asserts the trial court erred in failing to determine that the Commercial Gross Lease executed on December 23, 2016 superseded and replaced the Lease of Commercial Property signed by Ms. Torrence on December 9, 2016. Positivelytilton argues the trial court should have enforced the second sublease, and ruled that it was in compliance with the terms of that sublease. In the alternative, if the first sublease is applicable, Positivelytilton argues the trial court erred in failing to find that termination of the sublease and eviction was unwarranted for failure to give notice under the terms of the first sublease, or for failure to find that it was amended to reduce the rent in 2018.

Positivelytilton argues the Commercial Gross Lease, executed on December 23, 2016 is the agreement between the parties by which compliance must be judged. Positivelytilton takes the position that the Commercial Gross Lease replaced the Lease of Commercial Property, apparently executed on December 9, 2016, and that it paid the correct amount of $2500 per month in a timely fashion. Further, it argues that the $2500 deposit paid under the terms of the first sublease should have been refunded when the second sublease was executed.

Aces' counter argument is that the first sublease remains valid, making $2563 the correct rent for December of 2018, and setting monthly rent at the rate of $2627 for January and February of 2019. Aces makes the argument that Positivelytilton complied with the terms of the first sublease throughout 2017 and most of 2018, proving that the first sublease reflects what the parties intended.

The trial court considered these arguments and found that "evidence presented showed that Plaintiff (Positivelytilton) complied with the terms and conditions set forth in the Lease of Commercial Property, including paying the enhanced rent amount of $2563 for the first eleven (11) months of 2018."

In Louisiana there are two mutually exclusive remedies to a lessor if a lessee fails to pay rent as it comes due. The lessor may hold the lessee liable for the rent due for the expired term of the lease and sue to dissolve the lease and evict the lessee. In the alternative, the lessor may sue to enforce the lease and to recover both accrued rentals and future accelerated rentals if the lease contains an acceleration clause. *1001 Harimaw Court E., L.L.C. v. Blo, Inc.*, 10-860 (La. App. 5 Cir. 5/24/11), 66 So.3d 1131, 1133.

In the matter before us, Aces opted to proceed with eviction proceedings. The lessor has the burden of proving, by a preponderance of the evidence, a valid lease and that the violation of the lease provides sufficient grounds for an eviction. *Guste Homes Resident Mgmt. Corp. v. Thomas,* 12-0386 (La. App. 4 Cir. 5/29/13), 116 So.3d 987, 991. Appellate courts "review the lower court's eviction ruling under the manifest error/clearly wrong standard of review." *Second Zion Baptist Church #1 v. Jones*, 17-0926 (La. App. 4 Cir. 4/18/18), 245 So.3d 9, 12.

"Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. Contracts must be performed in good faith." La. C.C. art. 1983. Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045, *Miller v. Louisiana Gas Service Co.,* 638 So.2d 458 (La. App. 5 Cir. 1994), *writ denied* 644 So.2d 394 (La. 1994). Intent of the parties is a matter of fact to be inferred from all of the surrounding

circumstances. *JIB Line Grp., LLC v. Legette*, 14-207 (La. App. 5 Cir. 11/12/14), 165 So.3d 93, 95.

The parties can alter a lease by mutual agreement. La. C.C. art. 2676 provides in pertinent part that rent in a lease "shall be fixed by the parties in a sum either certain or determinable through a method agreed by them." A contract may be modified or dissolved through mutual consent or by law. La. C.C. art. 1983; *River Oaks, Inc. v. Blue Cross of Louisiana,* 595 So.2d 785 (La. App. 5 Cir. 1992), *writ denied* 598 So.2d 361 (La. 1992); *Wise v. Lapworth,* 614 So.2d 728 (La. App. 5 Cir. 1993). Parole evidence may be admitted to show that a written contract was modified by a subsequent and valid verbal agreement. La. C.C. art. 1848.

Here, the trial court found that the first sublease apparently executed on December 9, 2016 reflected the intent of the parties and is the valid sublease. We find no manifest error in that factual finding. Ms. Torrence continued to operate the bar, using the parking lot and the name "Triangle West". She continued paying the rent in accordance with the first sublease. None of these actions indicate an intent to accept the second sublease as a superseding agreement between the parties, or to alter the terms of the first sublease. It wasn't until November of 2018, when Ms. Torrence tendered $2500 instead of $2563, that there was a challenge to the first sublease. When told that amount would not be accepted, Ms. Torrence wrote a new check for the higher amount in accordance with the first sublease.

Because there was no testimony offered by Ms. Torrence, we cannot ascertain whether she considered the second sublease to be the valid, superseding lease or whether she based her November rent payment on Mr. Grush's January, 2018 email reducing the rent under the first sublease. Ms. Torrence only challenged the amount of rent due, and there is no indication

that she discontinued use of the parking lot or the name of the bar as provided in the first sublease. Thus, it appears she still considered the first sublease to be valid, and an accurate intent of the parties. However, her pleadings demanding a refund of the $2500 deposit from the first sublease, her tender of $2500 for payments in the first two months of 2019, not included in the adjusted rent agreement in Mr. Grush's email and her arguments in brief to this Court, indicate she considers the second sublease to be valid.

Under the facts of this case, we cannot find manifest error in the trial court's finding of fact that the Lease of Commercial Property is the valid sublease. It is clear that Positivelytilton abided by the terms of the first sublease from the time it was executed in December of 2017 until December of 2018. Postitivelytilton took advantage of the use of the parking lot, the use of the tradename and paid the rent as set forth in that first sublease. Further, Aces explained that the second lease was merely an instrument for obtaining a liquor license and was never intended to supersede the first sublease. That testimony was undisputed by Positivelytilton. Accordingly, we affirm the trial court's ruling terminating the sublease and ordering Positivelytilton to vacate the premises and discontinue use of the trade name "Triangle West."

In its second assignment of error, Positivelytilton argues that Aces failed to meet its burden of proof in the eviction proceeding because it made no showing that it complied with the notice requirement in either sublease. We are not persuaded by this argument. Both versions of the sublease require that Aces give Positivelytilton notice of any default for non-payment of rent and afford Positivelytilton five days to cure the default. Aces provided notice to Positivelytilton when it rejected the rent checks in

December, January and February as insufficient.  Further, Positivelytilton had notice of overdue rent with the filing of Aces' the reconventional demand.

For the foregoing reasons, we affirm the judgment of the trial court and remand the matter for further proceedings.

**AFFIRMED AND REMANDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **DECEMBER 26, 2019** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**19-CA-321**

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HON. RAYMOND S. STEIB, JR. (DISTRICT JUDGE)
LEONARD M. BERINS (APPELLANT)          WALTER R. WOODRUFF, JR. (APPELLEE)          TYLER S. LOGA (APPELLEE)

### MAILED

EDWARD S. BOPP (APPELLEE)                GERALD WASSERMAN (APPELLANT)
ATTORNEY AT LAW                          ATTORNEY AT LAW
101 BROOKSIDE DRIVE                      3939 NORTH CAUSEWAY BOULEVARD
SUITE 101                                SUITE 200
MANDEVILLE, LA 70471                     METAIRIE, LA 70002