MARC E. JOHNSON, Judge.
 

 12This appeal arises from a judgment rendered in favor of Plaintiff/Appellant, 2800 Associates, L.L.C., in part, and in favor of Defendants/Appellants, Eagle Equity Limited Partnership #3 (“Eagle”) and Stein Mart, Inc. (“Stein Mart”), in part, from the 24th Judicial District Court, Division “A”. For the following reasons, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 According to the pleadings, on September 20, 1965, Lane L. Meltzer acquired from Tri-Color Investments a parcel of land on Veterans Highway in Metairie, Louisiana known as Lot X. The act of sale for this transaction was recorded in the mortgage and conveyance records at COB 622, Folio 219. Lot X included the property at the corner of Whitney Place, which would eventually become Lot X-A and Lot X-B.
 

 On June 10, 1966, Mr. Meltzer, as Lessor, leased a certain parcel of land situated
 
 *286
 
 on the Veterans Highway site to Barker’s 413 Corp. (“Barker’s”) as lessee. That lease was recorded at COB 976, Folio 919, and confirmed that Mr. Meltzer |3was to construct a one-story building containing a total area of approximately 66,200 square feet.
 

 On July 8, 1977, and amendment to Barker’s lease was recorded into the public records at COB 976, Folio 925. The amendment to the lease provided, in pertinent part:
 

 2. In the Lease provisions for loading were provided to Lessor on portions of the property cross hatched on the plan annexed hereto as Exhibit B, which shaded portions are in the rear of Lot Z not included within the Lease to Lessee, and Lessee does hereby relieve and release and forever relinquish any rights of, in, and to said portions cross hatched on Exhibit B annexed hereto ...
 

 3. Lessor agrees that Lessor shall not construct any buildings or improvements in the rear forty-one feet (south end of Lot Z), which area is cross hatched on Exhibit A annexed hereto,
 
 which forty-one feet may be utilized by Lessee in no expense to Lessor for ingress and egress for loading and unloading purposes only to accommodate the store of Lessee on the leased premised,
 
 the Lessor shall have the right likewise to utilize said 41 feet for any purposes whatsoever so long as such uses do not obstruct the ingress and egress of Lessee for such loading and unloading purposes. (Emphasis added).
 

 In 1977, the Jefferson Parish Council, by Ordinance No. 12998, approved and accepted a Plan of Re-subdivision dated July 20, 1977, which was recorded to COB 903, Folio 195, showing the re-subdivision of Lot X into Lot X-A and Lot X-B. On September 5, 1978, a Plan of Survey was prepared by R.L. Shumann. The Plan of Survey was attached to and made a part of an Act of Mortgage by Mr. Meltzer dated September 15, 1978, and recorded in MOB 747, Folio 59. Mr. Shumann made annotation on the 46' servitude shown on the survey which read “8 x 9.5 black building with trash compactor hookup.”
 

 On September 15,1978, Mr. Meltzer and his then wife executed and recorded a servitude of use. The servitude of use, which was recorded at COB 938 provides, in pertinent part: “A non-exclusive servitude for ingress and egress for |4loading and unloading purposes only, over and across the following described property, to wit:” (The property described is the 46' servitude that runs along the rear of Lot X-A.) This servitude extends from the East boundary of Lot X-A to the West boundary of Lot X-A, which is up to the East property line of Lot X-B. Accordingly, Lot X-B is the dominant estate, and Lot X-A is the servient estate.
 

 On June 9, 1992, the 1978 Servitude was acknowledged and re-adopted in a “Servitude of Ingress and Egress and Use” (“the 1992 Servitude”). This servitude was recorded in COP 2708, Folio 39. The 1992 Servitude provides, in pertinent part:
 

 The cost of paving and the building necessary facilities for access, ingress and egress to the loading and parking areas on XB and the cost of maintaining improvements to the strip subject to the 46-foot servitude including any taxes or assessments attributable to any such facilities and/or improvements shall be borne by XB owners.
 

 Subsequent to the signing of the 1992 Servitude, Eagle acquired Lot X-B.
 

 On September 26, 1990, Stein Mart entered into an agreement to sublease a portion of the store leased by Mr. Meltzer to Barker’s, which was recorded in the public records on October 24, 1990 at COB 2375,
 
 *287
 
 Folio 189. Stein Mart placed the first of the three freight containers on the 46' servitude in 1996. The last of the three freight containers was placed on the servitude in 1998.
 

 On October 31, 1997, Plaintiff acquired its property via an Act of Cash Sale. In the description of the property acquired, Lot X-A is described, in pertinent part, as a
 

 piece or portion of ground is designed by the LOT NO ‘XA’ on that certain re-subdivision plan of R.L. Shumann, Land Surveryor, dated July 20, 1977, approved by the Jefferson Parish Council by virtue of the ordinance No. 12998, adopted on August 11, 1977, which ordinance is registered on COP 903, folio 195 ...
 

 In addition, the Act of Sale also provided,
 

 TO HAVE AND TO HOLD the above-described Property unto the said Purchaser and Purchaser’s successors, heirs and assigns forever, subject in all respects, however, these matters described on Exhibit A attached hereto and incorporated herein.
 

 The “Exhibit A” referred to in the Act of Sale provides, in pertinent part:
 

 2. Access Servitudes of 46' and 26" across Lot X-A as shown on the survey of R.L. Shumann, dated February 26, 1979, revised March 22, 1979, created by Act of Servitude of Use dated September 15, 1978, registered in COB 938, fojio 375, by Lane Meltzer, et al to Barker’s 413 Corp., ...
 

 8. Servitude of Ingress and Egress and Use dated June 9, 1992, registered in COB 2078, Folio 039 by and between Lane Meltzer, et al between Lots X-A and X-B.
 

 On April 25, 2006, Plaintiff forwarded correspondence to Stein Mart, through its landlord, requesting that it cease and desist its use of the 46' servitude for ingress and egress, loading and unloading, receipt and shipping of merchandise, use of trash compactor and waste removal, storage, use of storage containers, access to storage facilities, and other related activities. On July 11, 2006, Plaintiff filed a Petition against Eagle for specific performance, damages, dissolution and injunctive relief. The Petition was later amended to include Stein Mart as a defendant.
 

 Stein Mart filed an Answer and Reeon-ventional Demand to Plaintiffs petition. Stein Mart prayed for specific performance to allow the use of the trash compactor and freight containers, a declaratory judgment, damages and attorney’s fees.
 

 Plaintiff filed a Motion for Partial Summary Judgment seeking the issuance of a permanent injunction. The trial court denied the motion on April 12, 2007. Eagle and Stein Mart also filed Motions for Summary Judgment or, alternatively, Partial Summary Judgment. Those motions were denied on June 18, 2007.
 

 The trial for this matter was conducted on October 5, 2009, after which the 16trial court took the matter under advisement. The trial court issued it judgment on November 5, 2009, essentially requiring the removal of the freight containers and refusing the removal of any other object. The trial court also denied the request for damages by Plaintiff and Stein Mart’s re-conventional demand.
 

 Plaintiff filed a motion for new trial. The motion was heard on February 4, 2010 and was denied on April 12, 2010. From that judgment, the instant appeal was filed. Prior to the oral arguments with this Court, Eagle and Stein Mart filed Peremptory Exceptions of Prescription seeking to dismiss all of the trespass claims raised by Plaintiff. We will now address the exceptions.
 

 
 *288
 

 Peremptory Exceptions of Prescription
 

 In their exceptions, Stein Mart and Eagle assert that all of Plaintiffs trespass claims, including any claims for trespass damages, are prescribed and should be summarily dismissed. Stein Mart and Eagle aver that Plaintiffs trespass claims are facially prescribed because Plaintiff had one year from the date it acquired or should have acquired actual knowledge of the damage or one year from the date of Plaintiffs constructive knowledge.
 

 Stein Mart and Eagle argue the trash compactor was present on the 46' servitude long before Plaintiff acquired its property, and the last of the three freight containers was placed on the servitude no later than 1998. Also, Stein Mart and Eagle argue that a representative of Plaintiff testified that both the trash compactor and the freight containers were open and obvious to anyone who viewed the 46' servitude. As such, Stein Mart and Eagle assert Plaintiff had actual and/or constructive knowledge of the trash compact and the freight containers at least eight years prior to filing the action, and the action is facially prescribed.
 

 Additionally, Stein Mart and Eagle assert the trash compactor and freight containers do not constitute “continuing trespasses” that interrupt prescription and cite
 
 Hogg v. Chevron USA, Inc.,
 
 09-2632 (La.7/6/10); 45 So.3d 991, 1001 as their authority. Stein Mart and Eagle argue it was a one-time act of placing the trash compactor and freight containers on the 46' servitude, which does not constitute a continuing trespass but merely the “continued effect” of the original placement. Thus, Stein Mart and Eagle contend the one year prescriptive period was not interrupted by the placement of the trash compactor and/or freight containers, and Plaintiffs trespass claims have prescribed.
 

 Adversely, Plaintiff asserts Stein Mart and Eagle have conflated the notions of trespass as a tort with trespass as a breach of a pre-existing contract. Plaintiff argues that its Petition alleges a breach of a servitude agreement, which is a contractual breach, not a tort. Plaintiff also argues that
 
 Hogg
 
 addresses tortious conduct that does not apply to this case. Consequently, Plaintiff avers Stein Mart and Eagle’s Peremptory Exceptions of Prescription should be denied.
 

 We agree with Plaintiffs position that the one-year prescriptive period does not apply to this action. Throughout the Petition, Plaintiff alleges the acts of Stein Mart and Eagle violate a servitude agreement, asks for specific performance, and prays for damages associated with the alleged breach of contract. Accordingly, we deny Stein Mart and Eagle’s Peremptory Exceptions of Prescription.
 

 ASSIGNMENTS OF ERROR
 

 On appeal, Plaintiff alleges the trial court erred by 1) refusing to grant Plaintiffs Motion for New Trial, 2) denying Plaintiffs request to order the removal of the trash compactor from the access servitude, which was contrary to the law and evidence, and 3) denying Plaintiffs request for damages for Defendants’ infringement of the access servitude, which was also contrary to the law and evidence.
 

 In its Answer, Defendant, Stein Mart, alleges the trial court erred in holding the freight/storage containers were a violation of the September 15, 1978 Servitude of Use and the June 8, 1992 Servitude of Ingress and Egress and Use. As a result, Stein Mart prays for this Court to reverse permanent injunction against it from maintaining any freight or storage containers on the 46' servitude situated on Lot X-A. Stein Mart also prays to have the portion
 
 *289
 
 of the judgment denying its reconventional demand reversed.
 

 LAW AND ANALYSIS
 

 Denial of Motion for New Trial
 

 Plaintiff avers the trial court abused its discretion when its Motion for New Trial was denied. Consequently, Plaintiff asserts the trial court’s abuse of discretion results from a conclusion reached capriciously, or in an arbitrary manner.
 

 Denial of a motion for new trial is an interlocutory and non-appealable judgment.
 
 Smith v. Smith,
 
 08-575, p. 11 (La.App. 5 Cir. 1/12/10); 81 So.3d 453;
 
 Roger v. Roger,
 
 99-765, p. 3 (La.App. 5 Cir. 1/12/00); 751 So.2d 354, 356. However, the Louisiana Supreme Court has instructed the courts of appeal to consider an appeal of the denial of a motion for new trial as an appeal of the judgment on the merits, when it is clear from appellant’s brief that he intended to appeal the merits of the case.
 
 Id.; See, e.g., Punctual Abstract Co. Inc. v. U.S. Land Title,
 
 09-91, p. 5 (La.App. 5 Cir. 11/10/09); 28 So.3d 459. It is obvious from Plaintiffs brief that it intended to appeal the merits of judgment rendered on November 5, 2009. We will consider the appeal from this judgment.
 

 Denial of the request to remove the trash compactor
 

 Plaintiff argues that the trial court erred in denying the requested removal of the trash compactor from the access servitude. Plaintiff avers the plan attached to Eagle’s mortgage is not evidence of what the parties under the 1978 or 1992 | ^Servitudes contracted for, or contemplated, in those documents. As a result, Plaintiff argues the only relevant evidence is the language of the servitude agreement itself.
 

 Because the placement of the trash compactor is not a permitted use under the 1992 servitude of ingress and egress, Plaintiff further argues that it is a violation and a trespass that should have been ordered to be removed. Plaintiff avers if the trash compactor was contemplated by the parties of the servitude as being part of a the right of use, it would have been specified, or even alluded to in the working of the 1978 servitude at the time of its creation or in the 1992 revision of the servitude. In the alternative, Plaintiff also argues that even if the trash compactor itself had actually been there since 1978, the filing of its action in 2006 would have interrupted bad faith acquisitive prescription.
 

 Eagle asserts the trial court was correct in denying the removal of the trash compactor because it has been an actual permitted use for unloading the retail store located on Lot X-B since Barker’s took possession in the 1960’s and is clearly recognized in the 46' servitude, which was created when the property was subdivided. Eagle avers the trash compactor was physically in place and in use on the 46' strip of land prior to the creation of the 1992 servitude. Because the trash compactor was on the servitude when Plaintiff purchased Lot X-A, even if it is not considered permissible under the predial servitude, Eagle contends that it is a permissible use as an expanded use of the personal servitude and is susceptible of being acquired through acquisitive prescription.
 

 Stein Mart avers there was ample evidence to support the trial court’s conclusion that the use of the trash compactor was appropriate pursuant to the 1978 and 1992 Servitudes. Stein Mart asserts the parties to the servitudes did contemplate the ongoing use of a trash compactor on Lot X-B, when both of the | l0servitudes at issue were executed after the trash com
 
 *290
 
 pactor was already in place on Lot X-B and is confirmed in the public records. Stein Mart further asserts the 1992 Servitude granted both a predial and personal servitude, both
 
 of
 
 which allowed the use of a trash compactor and considered it as a necessity. Additionally, Stein Mart contends that it obtained the right to use the trash compactor through acquisitive prescription.
 

 Generally, a contract, subject to interpretation on the four corners of the instrument without the necessity of extrinsic evidence, is interpreted as a matter of law. New
 
 Orleans Jazz and Heritage Foundation, Inc. v. Kirksey,
 
 09-1438, p. 9 (La.App. 4 Cir. 5/26/10); 40 So.3d 394, 401,
 
 citing Bartlett Constr. Co., Inc. v. St. Bernard Parish Council,
 
 99-1186, p. 6 (La. App. 4 Cir. 5/31/00); 763 So.2d 94, 98. The appellate standard of review with regard to contractual interpretations is as follows:
 

 Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown. However, when appellate review is not premised upon any factual findings made at the trial level, but is, instead, based upon an independent review and examination of the contract on its face, the manifest error rule does not apply. In such cases, appellate review of questions of law is whether the trial court was legally correct or legally incorrect.
 

 Id., citing Clinkscales v. Columns Rehabilitation and Retirement Center,
 
 08-1312, p. 3 (La.App. 3 Cir. 4/1/09); 6 So.3d 1033, 1035-1036.
 

 The manifest error standard of review does not allow the appellate court to reweigh the evidence or substitute its own factual findings.
 
 Kuebel v. Charuet’s Garden Center, Inc.,
 
 09-635, p. 17 (La. App. 5 Cir. 12/29/09); 30 So.3d 885, 895. Where there are two permissible views of evidence, the fact finder’s choice between them cannot be manifestly erroneous or plainly wrong.
 
 Id.
 

 When the terms of a contract are susceptible to more than one interpretation, In or there is uncertainty or ambiguity as to its provision, or the intent of the parties cannot be ascertained from the language employed, or fraud is alleged, parole evidence is admissible to clarify the ambiguity, show the intention of the parties, or prove fraud.
 
 Borden, Inc. v. Gulf States Utilities Co.,
 
 543 So.2d 924, 927 (La.App. 1 Cir.1989),
 
 citing Dixie Campers, Inc. v. Vesely Company,
 
 398 So.2d 1087 (La.1981). In cases in which the contract is ambiguous, the agreement shall be construed according to the intent of the parties.
 
 Id.;
 
 LSA-C.C. art. 2045. Intent is an issue of fact which is to be inferred from all of the surrounding circumstances.
 
 Id.
 
 at 928;
 
 D'Antonio v. Simone,
 
 94-798, p. 6 (La.App. 5 Cir. 3/15/95); 653 So.2d 678, 680.
 

 In its Judgment, the trial court found that the presence of the trash compactor on the 46' servitude situated on Lot X-A is appropriate and consistent with the September 15, 1978 Servitude of Use and the June 8, 1992 Servitude of Ingress and Egress and Use. The trial court concluded the public record indicated that a trash compactor hook-up has been located on the servitude since, at least, September 5, 1978, when the first servitude agreement was executed and recorded. The trial court further found the use of the trash compactor was obviously contemplated by the parties as an accessory right related to loading and unloading and necessary to remove trash from Lot X-B. Ultimately, the trial court concluded the trash compactor does not constitute a trespass, and Plaintiffs request for removal was denied.
 

 
 *291
 
 After review, we find the 1978 and 1992 Servitudes were ambiguous as to exactly what is considered as a necessary facility for access, ingress and egress and is susceptible to more than one interpretation. Consequently, we find the interpretation of the servitudes at issue in this matter by the trial court contained pertinent factual findings regarding the trash compactor. There is sufficient | ^evidence in the record to support the trial court’s findings. As a result, we do not find that the trial court was manifestly erroneous in making the factual finding that the trash compactor was contemplated by the parties for loading and unloading, was necessary to remove trash from Lot X-B and does not constitute a trespass.
 

 Therefore, we do not find the trial court erred in denying the removal of the trash compactor from the 46' servitude.
 

 Denial of damages
 

 Plaintiff argues the trial court erred by not awarding any damages for the trespassing of the trash compactor. Plaintiff asserts it suffered damages in this matter in the form of lost rental income from the use of the servitude for storage.
 

 It is only after an articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review be considered either excessive or insufficient.
 
 Burgard v. Allstate Ins. Co.,
 
 04-1394, p. 23 (La.App. 5 Cir. 5/31/05); 904 So.2d 867, 880,
 
 citing Baudier v. Cheron,
 
 04-5, p. 12-13 (La.App. 5 Cir. 5/26/04); 876 So.2d 165, 172. Appellate courts review the evidence in the light which most favorably supports the judgment to determine whether the trier of fact was clearly wrong in its conclusions.
 
 Id.
 

 Because we previously found the trial court was not manifestly erroneous in finding the trash compactor was necessary for loading and unloading and was not a trespass, we find the trial court did not err in denying Plaintiffs claims for damages for the alleged trespassing of the trash compactor. Accordingly, we will not disturb the trial court’s ruling on this issue.
 

 Removal of the freight/storage containers and permanent injunction
 

 Stein Mart asserts the trial court erred by permanently enjoining it from placing its freight containers on the 46' servitude because it believes the use of the freight containers is appropriate pursuant to the 1992 Servitude. Stein Mart argues 1 i¡jthe freight containers are necessary components of its loading and unloading activities. Additionally, Stein Mart argues that, at minimum, its right to utilize the freight containers is an accessory right necessary for use of the 1992 servitude.
 

 In its Judgment, the trial court ruled that the presence of any freight/storage containers on the 46' servitude situated on Lot X-A is a violation of the September 15, 1978 Servitude of Use and the June 8, 1992 Servitude of Ingress and Egress and Use. Additionally, the trial court permanently enjoined Stein Mart and Eagle from maintaining any freight or storage containers on the 46' servitude situated on Lot XA.
 

 We consider the trial court’s interpretation of the servitudes regarding the freight/storage containers to be a factual finding. As such, we must review the trial court’s factual finding under the manifest error/clearly wrong standard.
 
 See New Orleans Jazz and Heritage Foundation, Inc. v. Kirksey, supra.
 
 After review of the record, there is sufficient evidence present to support the trial court’s finding that the freight/storage containers are a violation of the 1978 and 1992 servitudes. Consequently, we cannot find the trial court was manifestly erroneous in its ruling and find no error in the trial court’s
 
 *292
 
 granting of the permanent injunction in favor of Plaintiff.
 

 Accordingly, we will not disturb the ruling of the trial court on this issue.
 

 Denial of reconventional demand
 

 Stein Mart seeks a reversal of the trial court’s refusal to grant its request for specific performance from Plaintiff, request for damages for the alleged breach and/or anticipatory breach of contract, request for a declaratory judgment, request for all other damages, and request for attorney’s fees.
 

 Based upon our previous findings, we do not find that Stein Mart is entitled to the specific performance, declaratory judgment and damages requested; nor is it 114entitled to attorney’s fees, which can only be bestowed where authorized by statute or contract.
 
 See Brier Lake, Inc. v. Jones,
 
 97-2413, p. 16 (La.4/14/98); 710 So.2d 1054, 1061. Therefore, we will not disturb the ruling of the trial court on this issue.
 

 DECREE
 

 For the foregoing reasons, we affirm the judgment of the trial court. All parties to this matter are assessed their own costs for this appeal.
 

 AFFIRMED.
 

 LOBRANO, J., Concurs in the Result.