DONALD F. FLORES, JR.

VERSUS

DAVID B. CAMPBELL; NEW ERA
INFORMATION TECHNOLOGIES, LLC;
AND GLEN M. FEUCHT

NO. 21-CA-665

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 794-586, DIVISION "M"
HONORABLE ROBERT J. BURNS, JUDGE PRO TEMPORE,
JUDGE PRESIDING

July 06, 2022

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Jude G. Gravois

<u>**JUDGMENT REVERSED IN PART,**</u>
<u>**AMENDED IN PART,**</u>
<u>**AND AFFIRMED IN PART**</u>
 **SMC**
 **JGG**

<u>**DISSENTS IN PART WITH REASONS**</u>
 **FHW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Susan S. Buchholz
Susan S. Buchholz
First Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
DONALD F. FLORES, JR., INDIVIDUALLY
AND ON BEHALF OF NEW ERA INFORMATION TECHNOLOGIES, LLC
    Samuel Bradley Rhorer
    Zachary S. Walker

COUNSEL FOR DEFENDANT/APPELLEE,
DAVID B. CAMPBELL
    Albert J. Nicaud
    Jeffrey M. Siemssen
    Bret D. Guepet, Jr.

**CHEHARDY, C.J.**

Plaintiffs-appellants, Donald F. Flores, Jr., individually and on behalf of New Era Information Technologies, LLC ("New Era"), filed a petition asserting breach of contract, breach of fiduciary duties, and misappropriation against New Era's Chief Executive Officer ("CEO"), David B. Campbell. Plaintiffs allege that Campbell received excessive compensation in violation of New Era's Operating Agreement ("OA") confected in 2013 among the company's three partners – Flores, Campbell, and Glen Feucht, and that Campbell misused corporate funds to pay his and Mrs. Campbell's personal credit card expenses.[1] In addition to monetary damages, plaintiffs requested a declaratory judgment that would enumerate their respective percentages of ownership; requested an injunction prohibiting Campbell from allocating to himself more money than the members had agreed upon, pursuant to the provisions of the OA; asked the court to tax costs against the defendant; requested a formal accounting; and requested judicial interest from the date of demand. The trial court awarded $208,295.00 in damages to New Era on the excess-compensation claim, after determining that reasonable fee-for-services compensation for Campbell was $200,000 per year, exceeding the $60,000 fee-for-services compensation that the partners had agreed upon in 2013. The judgment declined to award damages for the credit card payments, declined to issue an injunction, denied the request for a formal accounting, and was silent as to judicial interest.

For the reasons that follow, we: (1) reverse the portion of the judgment that denied plaintiffs' request for a formal accounting; (2) amend the trial court's damages award to increase the amount that Campbell must reimburse New Era for unauthorized payments of excess compensation; (3) further amend the judgment to

---

[1] David Campbell's wife, Fran, is a CPA and served as New Era's tax preparer.

include judicial interest from the date of judgment; and (4) affirm the portions of the judgment that (a) denied damages for the alleged misuse of New Era funds to pay Campbell's credit card bills, (b) denied injunctive relief, and (c) denied the request to tax costs against defendants.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff, Donald Flores, was a founding member of New Era, which began in 2004.[2] New Era is registered as a limited liability company with Louisiana's Secretary of State but files its taxes as a partnership. Flores manages software development projects for New Era. New Era's primary sources of income are the service contracts it has won after successfully bidding on IT work in Jefferson Parish, as well as IT work for other parish-related entities, in response to Jefferson Parish's various Requests for Proposals (RFPs).[3]

Campbell became an owner/member of New Era in 2012, at which time he was allocated a 30% interest in the company. After other New Era members resigned, New Era's ownership was divided between the only remaining members, Campbell and Flores. In 2013, Campbell and Flores recruited Glen Feucht and each ceded 5% of their ownership interests to him, which resulted in the percentages of ownership that the three members retain today: Campbell, 57.5%; Flores, 32.5%, and Feucht, 10%.

When Feucht became a member, he asked Campbell and Flores to sign an OA. Feucht located a standard operating agreement online, eliminated a few of the provisions that he felt did not apply to New Era, and sent the revised OA to Campbell and Flores for their review. Without further amendment, all parties signed the OA on July 30, 2013.[4] Around that time, Campbell was recognized as

---

[2] Flores also founded Ultix, a software development firm, in 1989.

[3] According to Flores's testimony, New Era subcontracted with Ultix on New Era's very first RFP, and Ultix has been New Era's primary software developer since New Era began.

[4] Relevant provisions of the OA provide as follows:

New Era's CEO and given chief administrative responsibilities; he was also responsible for maintaining the relationships with councilmembers and other government employees to maintain and/or renew New Era's IT contracts with the local government entities.

Section 4.1 of the OA provides: "Any Member rendering services to the Company shall be entitled to compensation commensurate with the value of such services as all members unanimously agree upon." When Campbell, Flores, and Feucht signed the OA, Flores and Feucht both understood that Campbell's management fee was $60,000 per year. Flores, who was in charge of proposal writing and supervised software development projects, received no management fee, believing that he would be compensated through partnership profits. Feucht initially worked part time for $36,000 per year, as he was also working for another

---

2.1 **PROFITS/LOSSES.** For financial accounting and tax purposes the Company's net profits or net losses shall be determined on an annual basis and shall be allocated to the Members in proportion to each Member's relative capital interest in the Company, and as amended from time to time in accordance with Treasury Regulation 1.704-1.

2.2 **DISTRIBUTIONS.** The Members shall determine and distribute available funds annually or at more frequent intervals as they see fit. Available funds, as referred to herein, shall mean the net cash of the Company available after appropriate provision for expenses and liabilities, as determined by the Members.

3.1 **MANAGEMENT OF THE BUSINESS.** The management of the business is invested in the Members. The members do appoint one Chief Executive Member. The Chief Executive Member is the Member with the most responsibility and head of operations of the business.

3.5 **DISPUTES OF MEMBERS.** Disputes among Members will be decided by a majority vote. A member has the amount of votes according to the Members percent of interest. (Example: 11% is 11 votes). <u>There has to be a majority vote for an action to take place</u>. [Emphasis in original.]

3.8 **COMPANY INFORMATION.** Upon request, the Chief Executive Member shall supply to any member information regarding the Company or its activities. Each Member or his authorized representative shall have access to and may inspect and copy all books, records and materials in the Chief Executive Member[']s possession regarding the Company or its activities. The exercise of the rights contained in this ARTICLE 3.6 shall be at the requesting Member's expense.

4.1 **MANAGEMENT FEE.** Any Member rendering services to the Company shall be entitled to compensation commensurate with the value of such services as all members unanimously agree upon.

4.2 **REIMBURSEMENT.** The Company shall reimburse the Members for all direct out-of-pocket expenses incurred by them in managing the Company if unanimously agreed upon by all members.

21-CA-665                                    3

company in Baton Rouge. In 2015, Feucht began working full time for New Era and signed a contract with Campbell that provided Feucht an annual base "salary" of $120,000, benefits, and the title of Chief Operating Officer (COO).

Both forensic accounting experts who testified at trial explained that in a partnership, the partners are not employees of the company. Rather, they are self-employed and may receive two types of income: (1) the partner's share of the company's net profits (or losses), which are allocated to a partner's capital account according to his percentage of ownership, whether the partner takes a distribution from his capital account or not; and (2) guaranteed payments, loosely equivalent to an employee's salary, which must be provided for in an operating agreement but cannot be tied to the partner's percentage of ownership.

New Era's gross earnings steadily grew from approximately $1.5 million in 2013 to nearly $4 million in 2017. After 2013, and in light of New Era's apparent economic success, Campbell began increasing his compensation, reported as W-2 income. Again, this income is separate from Campbell's partnership earnings (or losses), which are calculated from the company's net profit according to a partner's ownership share, and which are reported separately on a partner's K-1, not a W-2.

Campbell's W-2 for 2013 shows that he earned $60,000, while his K-1 partnership earnings for 2013 showed $155,821 in self-employment earnings and $43,857 in distributions.[5] Campbell agreed that in 2014, separate from any partnership earnings, he raised his base compensation to $77,000 and also gave himself a $50,000 bonus. In 2015, he paid himself $121,000 plus a $60,000 bonus. In 2016, Campbell took $98,000 in fee-for-services compensation. In 2017, Campbell paid himself $242,538.36 in fee-for-services compensation, even though New Era's tax return showed a net loss of $73,000 (and his K-1 reported $42,465

---

[5] Campbell testified at trial that New Era wrote a letter to the IRS indicating that Campbell never cashed the $60,000 check, thus, the 2013 W-2 is incorrect, but that letter is not part of the record.

in lost self-employment earnings). In 2018, Campbell's W-2 listed $264,230.64 in compensation. Campbell's W-2s for the years after 2018 were not included in the record, but Campbell testified at trial that he paid himself $240,000 for 2019 and $240,000 for 2020.

Campbell further testified at trial that he never told his partners that he raised his fee-for-services compensation or that he awarded himself bonuses. Campbell also never sought his partners' input when issuing distribution checks or when seeking reimbursement for business expenses. Nevertheless, trial testimony from all three partners established that at least some of the charges on Campbell's personal credit cards were legitimate, reimbursable business expenses. All members testified that each year Campbell himself would determine the dividend distribution for each partner and would see that Flores and Feucht received checks.

In late 2017, Feucht emailed Campbell and Flores requesting a meeting to discuss dividend distributions, because New Era had nearly $4 million in gross earnings that year. Feucht sent a follow-up email in January 2018, noting that the members never met at the end of 2017 to discuss dividend checks. After seeing some off-cycle payroll transactions, Flores asked Campbell for bank statements and credit card statements. In an August 12, 2018 email, Flores notified his partners that from 2014 to 2018, New Era had paid $210,585.77 on four credit card accounts. At that time, Flores believed that the charges had been made using New Era's credit cards, not Campbell's personal credit cards.[6]

The members met on September 19, 2018, to discuss the possible renewal of the Jefferson Parish IT contract as well as reimbursements for business expenses. The September 19 meeting minutes refer to the OA provisions related to Reimbursements, Profits/Losses, and Distributions. The minutes state that the

---

[6] Flores indicated that two credit card statements were still missing, suggesting that the $210,000 in credit card payments was a preliminary amount.

members will hold mandatory monthly financial meetings to discuss member expense reports and other financial issues, and will discuss dividend distributions at quarterly meetings.

Another meeting was held on November 2, 2018. The meeting minutes indicate that all expense reports were approved by all members. The parties also discussed a Whitney Bank payment of $1,066.02 to American Express, a $3,889.00 payment to United Marine, and checks written from New Era to New Era on the Whitney account for $10,000 on May 29, $50,000 on June 8, and $50,000 on June 12, 2018. Campbell said that he could not remember what those checks were for but that he would look into it. Flores followed up one week later with an email to Campbell requesting more information about the $110,000 in checks written from one New Era bank account and deposited into a different New Era account. On November 11, 2018, Flores sent an email to Wanda Baroni, New Era's office manager, requesting information about out-of-cycle Paychex transactions in January 2018 for $8,316.73, $53,588.14, and $71,489.69.

Flores and Feucht agreed to meet again on December 6, 2018, but Campbell was not available. Flores later requested information about two more Paychex transactions on December 28, 2018 for $81,788.08 and $70,866.92.

Having not received any of the requested information, Flores informed his partners that he would be hiring a forensic accounting firm to audit New Era's books to ensure "complete financial transparency." On February 1, 2019, Flores's attorney sent a letter to Campbell requesting a comprehensive inspection of New Era's financial information. On February 5, 2019, Campbell signed a Louisiana Workforce Commission Separation Notice, which indicated that Flores had been discharged from his position at the company. Campbell also evicted Flores from New Era's building. Finally, Ms. Baroni, the office manager, sent a letter to Flores indicating that upon his February 5, 2019 termination, his health insurance would

also be terminated. Campbell also attempted to change the percentage of ownership that each partner held, reducing Flores' share to approximately 18%, and eliminating Feucht's 10% ownership interest.

Flores filed suit personally and on behalf of New Era on April 25, 2019. On January 13, 2021, a few months before trial, the trial court entered judgment finding that all claims before April 25, 2016, are prescribed, based on La. R.S. 12:1328 and La. R.S. 12:1501 *et seq.*[7] Plaintiffs did not seek review of that ruling. Thus, Campbell's W-2 income for 2014 and 2015 is excluded from consideration in calculating Campbell's excess compensation.

At the May 2021 bench trial, the trial court heard testimony from Campbell, Flores, Feucht, Baroni, and the two forensic accounting experts, Mark Shirley and John Theriot. Mr. Shirley, plaintiffs' expert, testified as to the kinds of compensation that the partners earned and explained his calculations for the allegedly excessive compensation that Campbell paid himself.[8] Campbell's expert, Mr. Theriot, agreed with Mr. Shirley's description of the types of self-employment compensation available to the partners, but he also testified at length regarding what "reasonable compensation" for the CEO of an IT company in Louisiana would be, finding that amount to be $209,560.00 per year. On cross-examination, Mr. Theriot admitted that he failed to conduct a comparative analysis of the partners' respective duties, and that the information he used to reach this figure was data collected from corporations, not partnerships. Theriot also agreed that Campbell's total compensation had two components – his fee-for-services

---

[7] La. R.S. 12:1502 C states that no action for damages against a member for an unlawful distribution or breach of fiduciary duty "shall be brought unless it is filed … within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered, but in no event shall an action covered by the provisions of this Subsection be brought more than three years from the date of the alleged act, omission, or neglect."

[8] Mr. Shirley calculated that Campbell had paid himself a total of $1,146,332.34 in excess fee-for-services compensation after 2013.

compensation (or guaranteed payment), and his partner share of the company's net profits.

At the conclusion of trial, the parties stipulated that the parties' ownership interests in New Era were: David B. Campbell, 57.5% interest; Donald F. Flores, 32.5% interest; and Glen M. Feucht, 10% interest, and the trial court granted declaratory relief to that effect. Plaintiffs then requested a money judgment to reimburse New Era $870,496.15, the alleged amount of compensation in excess of $60,000 that Campbell paid himself in the three-year period before Flores filed suit, and requested judicial interest from the date of demand. Plaintiffs also asked the trial court to (i) order Campbell to reimburse New Era for credit card payments in the amount of $125,596.03; (ii) order a formal accounting by an independent accountant, because they have not seen complete records for 2019, 2020, or 2021; (iii) enter an injunction prohibiting Campbell from taking more than $60,000 per year in fee-for-services compensation without obtaining unanimous consent; and (iv) tax costs against the defendant.

In oral reasons for judgment, the trial court determined that pursuant to the Operating Agreement, Campbell's fee-for-services compensation was set at $60,000 per year; this compensation should not have been changed without a unanimous agreement; and Campbell breached the agreement by compensating himself each year above that amount.[9] The court also pointed out that the agreement indicated that compensation should be commensurate with the value of the services as all members unanimously agreed upon. Based on the testimony of Campbell's expert, Mr. John Theriot, the trial court valued Mr. Campbell's service

---

[9] The trial court stated: "I believe there was a meeting of the minds regarding this Operating Agreement. I believe they all understood including Campbell it was at the sum of $60,000, so obviously in my view Campbell breached this Operating Agreement, but the question is what damages were really caused to the company and to these parties." Later in his oral reasons, the trial court continued: "cookie cutter or not, [the Operating Agreement was] signed by the parties, agreed to by the parties and the parties are bound by it."

to the company at $200,000 per year and awarded New Era the total of the

amounts above $200,000 for the years 2017, 2018, 2019, and 2020, which the trial

court found to be $208,295.00.[10] The trial court denied plaintiffs' claim for

reimbursement for Campbell's alleged misuse of New Era funds to pay his

personal credit cards, finding that plaintiffs failed to meet their burden of proof

with any specificity. The trial court also denied plaintiffs' request for a formal

accounting, denied the request for injunctive relief, and denied plaintiffs' request

that costs be taxed against defendant.

Plaintiffs now appeal the trial court's judgment and assert seven assignments

of error:

1. After finding that the contracting parties had agreed to an amount for Campbell's "fee for services" component of his compensation, the trial court erred in using its determination of what was "reasonable" compensation to calculate damages.
2. Even if the trial court were legally permitted to substitute its finding of "reasonable" compensation for the agreement among the parties, the court erred by ignoring distributable share of company income as a component of Campbell's compensation.
3. The trial court erred in denying damages for the amounts Campbell paid for personal credit cards with the company's funds, and incorrectly imposed the burden of proof on plaintiff rather than on Campbell, pursuant to La. R.S. 12:1314.
4. The trial court erred in denying plaintiff's demand for a formal accounting.
5. The trial court erred in denying plaintiff's request to enjoin Campbell from modifying the "fee for service" component of his own compensation without unanimous consent.
6. The trial court erred in ordering plaintiffs to bear their own costs.
7. The trial court erred in failing to award judicial interest on the amount of judgment.

---

[10] Campbell's W-2 for 2016 showed income of $98,000, well below the "reasonable" salary determined by the trial court. It is not clear from the record how the trial court handled compensation for this year.

**ANALYSIS**

*Assignments of Error 1 and 4 – excessive fee-for-services compensation and request for a formal accounting*

In their first assignment of error, plaintiffs point out that the trial court correctly determined that Campbell breached the OA, but the court erroneously determined what a "reasonable" fee for service amount would be rather than adhering to the terms of the OA. In their fourth assignment of error, plaintiffs request a formal accounting pursuant to La. R.S. 12:1319 B(3) and Section 3.8 of the OA. As discussed below, we find merit in plaintiffs' first and fourth assignments of error.

An operating agreement is contractual in nature; thus, it binds the member of the LLC as written and is interpreted pursuant to contract law. *Risk Mgmt. Servs., L.L.C. v. Moss*, 09-632 (La. App. 5 Cir. 4/13/10), 40 So.3d 176, 180, *writ denied*, 10-1103 (La. 9/3/10), 44 So.3d 683. An abuse-of-discretion standard applies when reviewing an award of damages for breach of contract. *Hernandez v. Martinez*, 00-1282 (La. App. 5 Cir. 2/28/01), 781 So.2d 815, 821. A manifest-error standard of review applies to factual findings that are pertinent to the interpretation of a contract. *2800 Associates, L.L.C. v. Eagle Equity Ltd. P'ship No. 3*, 10-687 (La. App. 5 Cir. 3/29/11), 64 So.3d 283, 290. When appellate review is not premised on the trial court's factual findings but is instead based on an independent review and examination of the contract on its face, the appellate court reviews the issue as a question of law to determine whether the trial court was legally correct or legally incorrect. *Id*.

Section 4.1 of New Era's operating agreement provides: "Any Member rendering services to the Company shall be entitled to compensation commensurate with the value of such services as all members unanimously agree upon." Although the OA does not specifically list Campbell's compensation as

$60,000 in Section 4.1, the record establishes, and the trial court found, that all parties signed the OA in 2013 and, at that time, all parties understood that Campbell would receive $60,000 per year in fee-for-services compensation.

Feucht and Flores both testified at trial that they believed Campbell was making $60,000 per year in fee-for-services compensation and that Campbell did not consult either partner about his decision to increase that amount. Campbell's own testimony corroborated Flores' and Feucht's testimony in this regard. Yet Campbell believed that he was entitled to unilaterally increase his compensation under Section 3.5 of the OA, which states that "disputes among Members will be decided by a majority vote. A member has the amount of votes according to the Member[']s percent of interest." Because Campbell owned 57.5% of the company, he believed that he could outvote his partners if a dispute about his compensation were to arise.

Under the present facts, we disagree with Campbell's interpretation of the OA and agree with the trial court's finding that Campbell breached the OA when he increased his fee-for-services compensation without consulting his partners. Section 4.1 states that the partners should "unanimously agree upon" the value of a partner's services when setting a partner's compensation; it does not provide that the "value of such services" is determined independently, nor does it state that compensation is based upon a "reasonable" value for the services provided. Even though Campbell arguably could have outvoted his partners pursuant to Section 3.5 *in the event of a dispute*, that Section was never invoked because there was never a dispute. By his own admission, Campbell did not discuss the issue with his partners at all.

Campbell's breach of the OA is magnified by two examples in which the other partners' compensation *was* negotiated. First, in 2015, when Feucht began working for New Era full time, Campbell signed an employment contract with

Feucht guaranteeing him $120,000 per year. As CEO, Campbell certainly could have re-negotiated his own guaranteed compensation with his partners at that time. Second, in 2016, Flores negotiated with Campbell and Feucht for an hourly rate for writing bid proposals in response to RFPs. Flores testified that he drafted approximately 24 proposals for free before asking New Era to pay him $60.00 per hour for that work. The other two partners negotiated the hourly rate down to $56.00 per hour. In 2018, however, the partners agreed to pay Flores $72.00 per hour for drafting proposals, again the result of negotiations among partners. Notably, Flores stated at trial that he probably would have approved an increase in Campbell's fee-for-services compensation if Campbell had asked.

A contract has the effect of law between the parties and may be dissolved only through the consent of the parties or on grounds provided by law. La. C.C. art. 1983. Campbell's majority ownership does not relieve him from adhering to Section 4.1's unanimous-approval requirement. Feucht testified that the OA was in place to protect the minority partners' interests. The unanimity requirement found in Sections 4.1 and 4.2 exist in furtherance of that protection. Campbell's unilateral decision to increase his fee-for-services compensation also reduced all partners' net profits. As contemplated in OA Section 2.2, partnership profit is determined only after all expenses, including W-2 compensation, have been subtracted. Campbell's accounting expert, Mr. Theriot, agreed that if a partner takes a guaranteed payment such as fee-for-services compensation in lieu of taking a partnership distribution, this decreases each member's partnership earnings.

The trial court correctly determined that New Era was entitled to restoration of the excess compensation that Campbell collected in light of Campbell's breach of the OA. Yet the trial court erred as a matter of law when it decided to supplant the New Era members' decision-making authority—authorized by Section 4.1 of the OA—with the court's own judgment regarding reasonable compensation. "A

court is not to be concerned with the wisdom or folly of a contract. [] Its duty is confined to the ascertainment of the limits of the rights and obligations of the contracting parties as they have defined it for themselves." *Color Stone Intern., Inc. v. Last Chance CDP, LLC*, 08-35 (La. App. 5 Cir. 5/27/08), 986 So.2d 707, 712. Because the trial court erred as a matter of law in deciding that the excess compensation award should be based on a "reasonable" salary for Campbell, we review the trial court's damages award *de novo*. *See Advanced Medical Rehab, L.L.C. v. Manton*, 21-315 (La. App. 5 Cir. 2/23/22), -- So.3d --, 2022 WL 533885, at *3.

The record contains testimony and evidence sufficient to recalculate the amount of fee-for-services compensation in excess of $60,000 per year that Campbell paid himself from 2016 to 2020. Campbell's W-2s for 2016, 2017, and 2018 establish wages of $98,000, $242,538.36, and $264,230.64, respectively. Moreover, Campbell testified at trial that he compensated himself $240,000 per year for 2019 and 2020. Based on this evidence, we find that Campbell's breach of the OA resulted in excess fee-for-services compensation from 2016 to 2020 in the amount of $784,769.00, and therefore amend the trial court's judgment to reflect that amount of damages.[11]

With regard to plaintiffs request for a formal accounting, plaintiffs contend in their fourth assignment of error that they did not receive all financial records for 2019, 2020, and 2021, and they argue that Campbell should be ordered to produce these documents pursuant to La. R.S. 12:1319. Under that statute, a member may … "[d]emand a formal accounting of the limited liability company's affairs

---

[11] We recognize, without deciding, that some portion of the compensation that Campbell has been ordered to return to New Era may be subject to potential redistribution to Campbell as partnership profits.

whenever circumstances render it just and reasonable." La. R.S. 12:1319 B(3).

Additionally, Section 3.8 of the OA provides:

> Upon request, the Chief Executive Member shall supply to any member information regarding the Company or its activities. Each Member or his authorized representative shall have access to and may inspect and copy all books, records and materials in the Chief Executive Member[']s possession regarding the Company or its activities. The exercise of the rights contained in this ARTICLE 3.6 shall be at the requesting Member's expense.

Given the testimony that plaintiffs did not receive all of New Era's records for 2019, 2020, and 2021, we find the trial court abused its discretion in refusing to grant plaintiffs' request for a forensic accounting. Accordingly, we reverse that portion of the trial court's ruling and permit plaintiffs to conduct a formal accounting at Flores's expense.

*Assignment of Error 2 – calculating reasonable compensation*

In their second assignment of error, plaintiffs contend that even if the trial court were permitted to substitute a "reasonable" fee-for-services compensation in calculating New Era's damages, the trial court also should have considered the amount of earnings Campbell received in partnership income, as he owns 57.5% of the company. Because we have already determined that the trial court erred as a matter of law in determining "reasonable" compensation before calculating New Era's damages caused by Campbell's excess fee-for-services earnings, we need not address this issue.

*Assignment of Error 3 – burden of proof on credit card claim*

The trial court denied any damages related to the allegations that Campbell breached his fiduciary duty to the company when New Era paid Campbell's personal credit card bills, finding a lack of proof. Plaintiffs contend that pursuant to La. R.S. 12:1314, the trial court erred because Campbell, not plaintiffs, had the burden of proving that the payments New Era made to Campbell's credit card

companies were legitimate. Moreover, under Section 4.2 of the OA, the members must unanimously agree to the reimbursement of a member's out-of-pocket expenses.

Under La. R.S. 12:1314 A(5), "a member … [s]hall account to the limited liability company and hold as trustee for it any profit or benefit derived by him … from any personal use by him of its property unless he proves under strict judicial scrutiny the fairness of the transaction to the limited liability company." La. R.S. 12:1314 E provides: "A person alleging a breach of the duty of diligence, care, judgment, and skill owed by a member or manager under Subsection A has the burden of proving the alleged breach of duty, … and, in a damage action, the burden of proving that the breach was the legal cause of damage suffered by the limited liability company."

Notwithstanding the provisions of La. R.S. 12:1314 A(5), we find that plaintiffs bore the initial burden of proving Campbell's alleged breach of duty to New Era by providing enough evidence to cast substantial doubt on New Era's payment of Campbell's credit card bills. Campbell and the office manager, Ms. Beroni, testified that New Era did not have its own credit card for some time and that Campbell agreed to put certain New Era business expenses on his personal credit cards. Although Flores stated that Campbell misappropriated New Era funds to pay for a cruise, a beachfront vacation, numerous expensive meals, and other allegedly unauthorized or non-business expenses, Campbell testified, and Flores and Feucht essentially agreed, that the money Campbell spent to attend out-of-town functions and to wine and dine prospective contractors were legitimate business expenses. Approximately 90% of New Era's income came from government contracts, and when cross-examined, the partners tended to agree that meals, campaign contributions, and the maintenance of Campbell's relationship with potential contractors were a cost of doing business.

Flores also alleged that Campbell's son, a New Era employee, charged Uber and food expenses to his parents' credit cards, which were then paid for by New Era. Even though these allegations of misuse and unauthorized expenses may raise a red flag, plaintiffs failed to submit sufficient, specific proof of the amounts that Campbell or his family allegedly misspent. Plaintiffs offer only a total amount – approximately $210,000 – and contend that $125,000 of those expenses were not reimbursable business expenses and therefore should be refunded to New Era.

We find that the trial court did not abuse its discretion in refusing to order Campbell to reimburse New Era for these credit card payments. The record is devoid of evidence or testimony that points to specific, individual, unauthorized transactions or their amounts. When questioned at trial about some of the credit card charges that plaintiffs allege were unauthorized, Campbell explained, and Feucht and Flores generally agreed, that they were legitimate business expenses. And because New Era did not have its own credit card, Campbell charged those expenses on his own card. Without additional information to establish the allegedly unauthorized expenses with more specificity, this assignment of error lacks merit. Accordingly, this portion of the trial court's judgment is affirmed.

*Assignment of Error 5 – request for injunctive relief*

Appellants asked the trial court to enjoin Mr. Campbell "from drawing more than $60,000" in fees for services per year, pursuant to the terms of the Operating Agreement. The decision to grant or deny a request for injunctive relief shall not be disturbed absent a clear abuse of discretion. *Waste Management of La., L.L.C. v. Consolidated Garbage Dist. No. 1 of Par. Of Jefferson*, 12-444 (La. 5 Cir. 3/13/13), 113 So.3d 243, 248. "An injunction is a harsh, drastic, and extraordinary remedy, and should only issue when the party seeking it is threatened with irreparable loss or injury without adequate remedy at law." *Reasonover v. Lastrapes*, 09-1104 (La. App. 5 Cir. 5/11/10), 40 So.3d 303, 308.

As this case demonstrates, Campbell's actions of drawing more than $60,000 per year in fee-for-services compensation has not resulted in irreparable loss, and plaintiffs have an adequate remedy at law. Moreover, granting the requested injunctive relief could interfere with the terms of the OA, which permit the partners to modify Campbell's compensation upon unanimous agreement. Because there is no irreparable harm, we find no error in the trial court's refusal to grant the extraordinary remedy of injunctive relief, and this portion of the trial court's judgment is affirmed.

*Assignment of Error 6 – costs of litigation*

A trial court has the discretion to assess costs of a suit in any equitable manner. *Antill v. State Farm Mut. Ins. Co.*, 20-131 (La. App. 5 Cir. 12/2/20), 308 So.3d 388, 410. Plaintiffs argue that the trial court abused its discretion in ordering the parties to bear their own costs. La. C.C.P. art. 1920 provides:

> Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
>
> Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.

Moreover, La. C.C.P. art. 2164 provides:

> The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.

Both plaintiffs and defendants incurred substantial costs in this litigation. At trial, Flores stated that he had already incurred approximately $150,000 in legal fees and that he had paid between $30,000 and $35,000 for Mr. Shirley's initial forensic audit, which did not include Mr. Shirley's subsequent preparation for trial and testimony at trial. Though the trial court could have taxed costs against the

defendant pursuant to La. C.C.P. art. 1920, we cannot say that the court's refusal to do so amounted to an abuse of its vast discretion on this issue. Accordingly, we affirm this portion of the trial court's judgment.

*Assignment of Error #7 – judicial interest*

The trial court's judgment was silent on the issue of judicial interest. In their final assignment of error, plaintiffs contend the trial court erred in refusing to award interest on the judgment pursuant to La. C.C.P. art. 1921. We agree.

Article 1921 provides: "The court *shall* award interest in the judgment as prayed for or as provided by law." (Emphasis added). When a party prays for an award of interest in a pleading seeking a monetary judgment, the court lacks discretion to deny interest on the award." *In re Succession of Banks*, 11-26 (La. App. 5 Cir. 6/29/11), 71 So.3d 1086, 1098.

Plaintiffs' petition clearly prayed for an award of monetary damages plus interest, and plaintiffs' counsel reiterated the request for judicial interest from the date of demand at the conclusion of trial. Having awarded monetary damages in plaintiffs' favor, the trial court erred in failing to also award judicial interest. However, we find that the interest on the damages awarded for breach of contract should be awarded from the date of judgment rather than the date of demand. *See Elliott v. Normand*, 07-569 (La. App. 5 Cir. 1/22/08), 976 So.2d 738, 742-43 (finding that damages for the breach of a repair contract did not qualify for pre-judgment interest, which is reserved for actions in tort, not actions in contract). Accordingly, the judgment is further modified to reflect that the award in favor of plaintiff, New Era Information Technologies, LLC, and against defendant, David Campbell, includes judicial interest from the date of judgment.

## CONCLUSION

The portion of the trial court's judgment denying plaintiffs' request for a formal accounting is reversed. The trial court's award of damages against David B.

Campbell and in favor of New Era Information Technologies, LLC, for breach of contract is amended to award $784,769.00, plus judicial interest from the date of judgment. The portions of the trial court's judgment finding that plaintiffs failed to meet their burden of proof on the claim for New Era's credit card payments, denying plaintiffs' request for injunctive relief, and ordering the parties to bear their own costs, are affirmed.

**JUDGMENT REVERSED IN PART,**
**AMENDED IN PART,**
**AND AFFIRMED IN PART**

| DONALD F. FLORES, JR. | NO. 21-CA-665 |
|---|---|
| VERSUS | FIFTH CIRCUIT |
| DAVID B. CAMPBELL; NEW ERA INFORMATION TECHNOLOGIES, LLC; AND GLEN M. FEUCHT | COURT OF APPEAL |
|  | STATE OF LOUISIANA |

## J., WICKER DISSENTS IN PART WITH REASONS

I respectfully dissent from the majority opinion only insofar as it affirms the trial court's judgment ordering each party to bear its own costs of these proceedings.

La. C.C. art. 1920 provides that "[e]xcept as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable." Generally, however, the prevailing party is not assessed with costs, unless in some way he incurred additional costs pointlessly or engaged in other conduct to justify an assessment of costs against him. *Westley v. Allstate Ins. Co.*, 05-100 (La. App. 5 Cir. 5/31/05), 905 So.2d 1127, 1137.

A trial judge has great discretion in assessing costs and, in fact, in some narrow circumstances, the best interests of justice are served by casting a prevailing party with costs. *In re Bass*, 15-1680 (La. App. 1 Cir. 6/3/16), *writ denied sub nom. In Int. of Bass*, 16-1220 (La. 10/17/16), 207 So.3d 1065, and *writ denied sub nom. In Int. of Bass*, 16-01240 (La. 10/17/16), 207 So.3d 1066, citing *Courtney v. Winn-Dixie Louisiana, Inc.*, 447 So.2d 504, 510 (La. App. 5th 1984), *writ denied*, 449 So.2d 1359 (La. 1984).

21-CA-665                    1

However, while La. C.C. art. 1920 grants the trial court discretion to assess costs as it may consider equitable, Flores accurately points out in brief that there are no equitable considerations in this case that would justify a deviation from the general prevailing rule that that the prevailing party should not be assessed with costs. Flores initiated this litigation on behalf of New Era to recover compensation improperly taken by Campbell without agreement of the other members. The evidence introduced at trial reflected that any change in compensation as to the other members was discussed or agreed upon but that Campbell increased his compensation without discussion with other members and in violation of New Era's Operating Agreement. This litigation was necessitated by Campbell's improper actions and the evidence demonstrated no action by Flores to pointlessly incur additional costs or any other conduct to justify assessing costs against him. Moreover, the trial court in its extensive oral reasons for judgment provided no articulable facts to support the decision for each party to bear its own cost and I find no factual evidence to support any finding that the "best interests of justice" would be served in assessing costs against Flores under the facts of this case.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
INTERIM CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**JULY 6, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT
REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 21-CA-665

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE MICHAEL P. MENTZ (DISTRICT JUDGE)
SAMUEL BRADLEY RHORER (APPELLANT)      DANIEL R. MARTINY (APPELLEE)        ALBERT J. NICAUD (APPELLEE)
JEFFREY M. SIEMSSEN (APPELLEE)

### MAILED
HONORABLE ROBERT J. BURNS,          ZACHARY S. WALKER (APPELLANT)       BRET D. GUEPET, JR. (APPELLEE)
JUDGE PRO TEMPORE (DISTRICT JUDGE)  ATTORNEY AT LAW                     ATTORNEY AT LAW
JUDGE DIVISION "F"                  10566 AIRLINE HIGHWAY                3000 18TH STREET
24TH JUDICIAL DISTRICT COURT        BATON ROUGE, LA 70816               METAIRIE, LA 70002
4TH FLOOR, SUITE 4100
GRETNA, LA 70053

DANIEL B. DAVIS (APPELLEE)
RANDALL E. ESTES (APPELLEE)
ATTORNEYS AT LAW
4465 BLUEBONNET BOULEVARD
SUITE A
BATON ROUGE, LA 70809